**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | No. 26-cr-042 |
| SAMUEL D. MARCUS | |

**GOVERNMENT'S MOTION FOR PRETRIAL DETENTION**

While employed by the United States Department of Defense, the defendant Samuel D. Marcus moonlighted as a money mule for a group of Nigerian-based fraudsters and laundered millions of stolen dollars through more than a dozen bank and cryptocurrency accounts. Marcus laundered money in 2023 and 2024 despite describing his co-conspirators as "scammers" who carried out "sophisticated online fraud" schemes. Marcus continued to launder money in 2025 even after being confronted by the FBI and being told the money he was transferring had been stolen from other people. Marcus also affirmatively misled and lied to his financial institutions about the funds, to include sending fraudulent invoices to his banks to make the transactions appear legitimate.

During the investigation, the FBI discovered that Marcus' cellular devices contained a significant number of recent and disturbing conversations referencing self-harm, harm against his family, and harm against his Nigerian-based counterparts. When paired with Marcus' ownership and access to multiple firearms, his recent (and potentially triggering) indictment and arrest, his apparent eagerness to please his Nigerian counterparts, and the likely loss of both his employment

and primary social network, among other red flags and unknowns, the government believes Marcus is presently a high-risk individual whose detention is required at this time.

Because no condition or combination of conditions exist, at this stage of the proceedings, that will reasonably assure the defendant's appearance as required and/or the safety of the community, coupled with the serious risk that Marcus will attempt to either obstruct justice or threaten or injure others, the government moves pursuant to 18 U.S.C. § 3142(e) and (f)(2) for a detention hearing and pretrial detention of the defendant. The government seeks an order of detention for Marcus without prejudice and with the understanding the Court may revisit its ruling later, as there may be a future date at which Marcus – with the help of his family, medical providers, and pretrial supervision – can be released on a set of restrictive conditions. That time, however, is not today.

## I.    <u>THE FACTS</u>

In support of this motion, the government makes the following representations and proposed findings of fact:

### A.    <u>Probable Cause And The Evidence In This Case</u>

There is probable cause to believe that the defendant has violated Title 18, United States Code, Sections 1956(h), 1957, 1956(a), and 2, as charged in the criminal indictment unsealed on February 3, 2026. The evidence in this case is strong, namely:

   a. Between 2023 and 2025, Marcus knowingly served as a money mule for a group of Nigerian-based fraudsters while also employed by the Department of Defense.

   b. Marcus and his business, SDM Clearing Depo LLC, laundered millions of dollars through more than a dozen bank accounts, converting the stolen victim funds into cryptocurrency.

c. The money laundered through Marcus' accounts was taken from U.S. victims through various romance fraud, cyber fraud, tax fraud, financing fraud, and business email compromise schemes.

d. Marcus continued to launder funds despite informing his banks in mid-2023 that (a) he knew the Nigerians were "scammers" who sent "fraudulent wire transfers" and committed "sophisticated online fraud", and (b) referencing and citing the bank's obligations to report "money laundering."

e. Marcus continued to launder funds in 2025 despite being confronted by the FBI and being told the money he was transferring had been stolen from other people.

f. Marcus' correspondence shows he misled and lied to financial institutions about some of the transfers, to include sending fraudulent invoices to make the fraudulent transactions appear legitimate.

g. Marcus made numerous admissions to the FBI, to include his knowledge that the scammers were Nigerian, his movement of millions of dollars through his accounts for the scammers, that he kept a small amount of the money for himself, and that he continued to work with the scammers after reporting them to the police in 2023.

h. Marcus' phone shows constant contact with the Nigerian-based scammers, to include his continued work up until his arrest, on February 3, 2026. At the time of his arrest, Marcus also had over 100 credit, debit, and other financial cards on his person.

In addition to the charged conduct, the government continues to investigate Marcus for additional fraud and money laundering criminal conduct, to include a multi-year tax fraud

3

scheme with resulted in Marcus receiving a $930,943.03 check from the U.S. Treasury which he deposited in April 2025.

    **B.**      **<u>Disturbing Information On Marcus' Phone</u>**

During the investigation, the FBI discovered that Marcus' cellular devices contained a significant number of recent and disturbing conversations related to self-harm, harm against his family, and harm against his Nigerian-based counterparts. *See* Exs. A and B (filed under seal). These threatening and graphic conversations were primarily located in conversations that Marcus had with the Nigerian-based scammers who were using the aliases "Rachel Jude" and "Ned McMurray," to include:

    **a.**   **Prior Consent Search of Marcus' Phone – Exhibit A**

        a.   Extensive Google search history from Nov. 2024 concerning what happens if a beneficiary murders a trustee[1]

        b.   Correspondence from April and October 2024 in which Marcus references the shooting or killing of his parents

    **b.**   **February 3, 2026 Preliminary Search of Marcus' Phones – Exhibit B**

        i.   References to Self-Harm – correspondence and a video from December 2025 and January 2026 in which Marcus references stabbing himself

        ii.   References to Harming his Family – correspondence from December 2025 in which Marcus references killing his family, including by shooting, stabbing, and burning the house down

---

[1] Based on the investigation to date, it appears that Marcus may be the beneficiary of a family or special needs trust.

iii.    References to Harming his Nigerian Counterparts – correspondence from late 2025 and early 2026 in which Marcus makes explicit references to shooting the families and killing the children of his Nigerian counterparts, to include putting them in chains and detonating a bomb at their house

iv.    Sharing the Identity of the FBI Case Agent – correspondence from December 2025 and January 2026 in which Marcus shared the name of the FBI case agent with his Nigerian counterparts, and also shared correspondence between himself and the FBI

## C.    <u>Marcus' Access To Multiple Firearms</u>

On December 1, 2025, the FBI conducted a recorded interview with Marcus, in which the FBI inquired with Marcus about his access to firearms, a rough transcript of which is below:

Q: Do you um, do you own any guns?

**A: ummmm … [pause] no.**

Q. You don't own any guns?

**A: I don't.**

Q. Ok. You used to though, right? Cause before I met with you, like I got to do my research, I ran you through our system and it said you had purchased like three or four handguns?

**A. Yeah, I do own a gun still, I do own it, it's just that, I keep it lock and storage. I do own it, I do.**

Q. Ok. So you own one gun or how many guns?

**A. Just three guns.**

Q. You own three guns? Ok. And they're all locked up?

**A. Yeah, they are all locked up.**

Q. You got them in a gun safe, or what?

**A. I put them in storage, and keep them all locked up so no one can access but me.**

Q. Ok. At your house, at [residential address redacted] Road, right?

**A. No, I put it in the other storage location, and I locked it up there and kept it safe, and keep it locked up.**

Q. Oh, you have a storage facility somewhere?

**A. Yes, and I keep it locked up there.**

Q. Where's that?

**A. That is in Abington, Pennsylvania.**

Q. Ok. But nobody else has access to those guns, right?

**A. Nobody else, just me.**

Q. And there's no guns in [your residential address] Road?

**A. No.**

Q. Ok, well that's good. As long as you are keeping them safe, there's obviously no issues.

**A. Yes.**

A database check conducted by the FBI also indicated that Marcus currently owns three firearms.

### D.    Maximum Penalties

The total maximum penalty the defendant faces on the pending charges is 100 years' imprisonment, a $2,000,000 fine, up to three years supervised release, and an $800 special assessment.

**E.    Criminal Record**

The defendant has no known criminal history.

**F.    Community Ties, Employment, and Mental Health**

Marcus is a college graduate of Temple University, and he resides (apparently alone) in Montgomery County, Pennsylvania, in his parents' house. He has been employed with the Department of Defense since May 13, 2019, and currently holds a security clearance and the position of Tailored Vendor Logistics Specialist, a GS-0301-11 position, with the Defense Logistics Agency. No final decision has been made, but Marcus' clearance and continued employment with the federal government are uncertain in light of the pending federal criminal charges.

A preliminary review of Marcus' phone suggests his social network consists entirely or nearly entirely of the Nigerian-based scammers. In a recorded interview, Marcus told the FBI that he talks with the Nigerians for 3-4 hours a day.

The defendant appears to have a neurological condition or deficit. The government does not currently have access to Marcus' medical records or diagnosis, but in conversations with defense counsel his condition may be static encephalopathy, a form of permanent brain damage. The symptoms for this condition can range from mild to severe, and the specifics of Marcus' condition and severity are unknown at this time to the government.

Marcus' psychological history and treatment – to include any clinical assessments and involuntary commitments, if any – are also unknown to the government at this time. If there has been no recent assessment or treatment, a clinical assessment by a clinical psychiatrist for safety, risk assessment, and risk reduction, may be warranted, especially in light of Marcus' recent arrest and detention, along with the nature of his phone messages.

## II.    **CONCLUSION**

When all these factors are viewed together, no condition or combination of conditions exist, at this preliminary stage of the proceedings, that will reasonably assure the safety of others and the community and allay the serious risk that Marcus will attempt to either obstruct justice or threaten or injure others if released. The government seeks an order of detention for Marcus without prejudice and with the understanding the Court may revisit its ruling later, as there may be a future date at which Marcus – with the help of his family, medical providers, and pretrial supervision – can be released on a set of restrictive conditions.

WHEREFORE, the government respectfully submits that its Motion for Defendant's Pretrial Detention should be granted.

Respectfully submitted,

DAVID METCALF
United States Attorney


*/s/ Samuel S. Dalke*
Samuel S. Dalke
Assistant United States Attorney

Date:    February 6, 2026

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

UNITED STATES OF AMERICA

v.

SAMUEL D. MARCUS

No. 26-cr-042

**PRETRIAL DETENTION ORDER**

AND NOW, this          day of February, 2026, after an evidentiary hearing and argument of counsel for the government and the defendant, the Court finds that the government has proved by a preponderance of the evidence that no condition or combination of conditions will reasonably assure the safety of other persons and the community.

The Court makes the following findings of fact:

This case is appropriate for detention under Title 18, United States Code, Section 3142(e) and (f)(2) because:

1.      There is probable cause to believe that the defendant has violated Title 18, United States Code, Sections 1956(h), 1957, 1956(a), and 2.

2.      The evidence in this case is strong.

        a.      Between 2023 and 2025, Marcus knowingly served as a money mule for a group of Nigerian-based fraudsters while also employed by the Department of Defense.

        b.      Marcus and his business, SDM Clearing Depo LLC, laundered millions of dollars through more than a dozen bank accounts, converting the stolen victim funds into cryptocurrency.

c.    The money laundered through Marcus' accounts was taken from U.S. victims through various romance fraud, cyber fraud, tax fraud, financing fraud, and business email compromise schemes.

d.    Marcus continued to launder funds despite informing his banks in mid-2023 that (a) he knew the Nigerians were "scammers" who sent "fraudulent wire transfers" and committed "sophisticated online fraud", and (b) referencing and citing the bank's obligations to report "money laundering."

e.    Marcus continued to launder funds in 2025 despite being confronted by the FBI and being told the money he was transferring had been stolen from other people.

f.    Marcus' correspondence shows he misled and lied to financial institutions about some of the transfers, to include sending fraudulent invoices to make the fraudulent transactions appear legitimate.

g.    Marcus made numerous admissions to the FBI, to include his knowledge that the scammers were Nigerian, his movement of millions of dollars through his accounts for the scammers, that he kept a small amount of the money for himself, and that he continued to work with the scammers after reporting them to the police in 2023.

h.    Marcus' phone shows constant contact with the Nigerian-based scammers, to include his continued work up until his arrest, on February 3, 2026. At the time of his arrest, Marcus also had over 100 credit, debit, and other financial cards on his person.

3.    The total maximum penalty the defendant faces on the pending charges is 100 years' imprisonment, a $2,000,000 fine, up to three years supervised release, and an $800 special assessment.

2

4.      Investigators have recovered numerous recent, specific, and disturbing conversations from the defendant's electronic devices in which the defendant threatens self-harm, harm against his family, and harm against his Nigerian-based counterparts, including from December 2025, January 2026, and February 2026. Investigators also recovered recent conversations in which the defendant shared the identity of the FBI special agent and his correspondence with the FBI to his Nigerian-based counterparts.

5.      If released, the defendant has access to multiple firearms which he keeps in a storage locker under his control.

6.      The status of the defendant's employment and social network are currently unknown and appear to be in jeopardy. The defendant's present medical and mental health condition also remains unclear, and the Court is not aware of a clinical assessment of the defendant's safety, risk assessment, and risk reduction.

7.      When all these factors are viewed together, no condition or combination of conditions exist, at this preliminary stage of the proceedings, that will reasonably assure the safety of other persons and the community and allay the serious risk that the defendant will attempt to either obstruct justice or threaten or injure others if released.

Therefore, IT IS ORDERED that the defendant be committed to the custody of the Attorney General for confinement in a correction facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal; that the defendant be afforded reasonable opportunity for private consultation with counsel; and that, on order of a Court of the United States, or on request of an attorney for the government, the person in charge of the

3

corrections facility in which the defendant is confined deliver the defendant to a United States Marshal for the purpose of an appearance in connection with a court proceeding.


BY THE COURT:


_____
HONORABLE CAROL SANDRA MOORE WELLS
United States Magistrate Judge

<u>CERTIFICATE OF SERVICE</u>

I certify that a copy of the Government's Motion for Pretrial Detention, and Proposed Order

was served by ECF notice to counsel of record.

*/s/ Samuel S. Dalke*
Samuel S. Dalke
Assistant United States Attorney

Date:   February 6, 2026

5